UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HEATHER VENERUS,**

**Plaintiff,**

**v.**                                              **Case No:  6:13-cv-921-Orl-41GJK**

**AVIS BUDGET CAR RENTAL, LLC
and BUDGET RENT-A-CAR SYSTEM,
INC.,**

**Defendants.**
_____/

**ORDER**

THIS CAUSE is before the Court on Plaintiff's Renewed Motion for Class Certification

("Certification Motion," Doc. 80); Defendants' Motion to Strike Portions of the Affidavit of J.

Robert Hunter (Doc. 91); Plaintiff's Opposed Motion to Strike Affidavits of C. Thomas Gallagher

and Gregory V. Serio (Doc. 113); and Defendant Avis Budget Car Rental, LLC's ("Avis/Budget")

Motion to Dismiss Plaintiff's Proposed Class Claims on Behalf of Avis Renters for Lack of Article

III Standing (Doc. 130).

As an initial matter, the three expert affidavits that are the subject of the parties' motions

to strike (Hunter Aff., Doc. 79-4; Gallagher Aff., Doc. 104-1; Serio Aff., Doc. 104-2) go to the

merits of Plaintiff's claims and are irrelevant to the issue of class certification or standing. Thus,

to the extent the motions request that the affidavits not be considered in determining the

Certification Motion and the Motion to Dismiss, the motions to strike will be granted.  Further, as

set forth herein, the Certification Motion will be granted in part and denied in part and the Motion

to Dismiss will be denied.

**I.      BACKGROUND**

Defendants are car rental companies.[1] As part of Defendants' business model, they contract with third-party brokers to sell rentals to individuals who are located outside of the United States but who will be traveling to the United States. (Casco Dep., Doc. 92-3, at 9:23–10:4; Vitale Dep., Doc. 92-6, at 12:9–12). Defendants enter into Car Rental Supply Agreements ("Supply Agreements") with these brokers, which, among other things, allow the brokers to sell "bundled" rentals to international inbound customers. (Shick Dep., Doc. 92-5, at 13:23–14:5, 75:1–5; Roppel Dep., Doc. 92-4, at 10:3–6).[2] Under these bundled rentals, the customers pay one flat fee in exchange for the rental of a car along with certain other inclusions, such as unlimited mileage, loss damage waivers ("LDW"), taxes, airport fees, and third-party liability coverage. (*See* Shick Dep. at 20:17–24, 25:18–21, 37:2–38:9). The third-party liability coverage is at the heart of this case and requires explanation before discussing the relevant facts of this case.

### A. Third-Party Liability Coverage

There are three terms that are used for various third-party liability coverages in this case: third-party contractual liability coverage ("contractual liability coverage"), supplemental liability insurance ("SLI"), and additional liability insurance ("ALI"). According to Defendants, SLI and

---

[1] Defendant Budget Rent-A-Car System, Inc. ("Budget") is owned by Avis/Budget, (Vitale Dep., Doc. 92-6, at 7:19–21), and at least some of the relevant decision-makers set business policies for both companies, (*see id.* at 6:9–19; Shick Dep., Doc. 92-5, at 13:9–13). For purposes of this motion, except where specified, the facts and analysis apply equally to both companies, which will be addressed collectively as "Defendants."

[2] There does not appear to be a uniform term used by the parties to describe these bundled rates. (*See, e.g.*, Vitale Dep. at 12:9–16 (referring to them as "tour voucher[s]")). Additionally, there are two different compensation schemes for the brokers, referred to as "net rates" and "gross rates." (Roppel Dep., Doc. 92-4, at 10:16–11:7). The terms "net" and "gross" rates apply only to how the brokers are compensated, not the way the services are bundled for customers; the same type of bundled packages are offered to customers regardless of whether the broker is operating under a "net rate" or "gross rate" compensation scheme. (*Id.* at 11:9–12:1). Nevertheless, in some of the discovery documents, the parties occasionally refer to the bundled rates as "net rates." To avoid confusion, the Court will utilize the term "bundled rates."

ALI are the same thing—insurance policies purchased by customers through Defendants that are issued by an independent, licensed insurance company. (Vitale Dep. at 24:20–22, 41:6–42:25). SLI is the term used for the Avis brand, and ALI is the term used for the Budget brand. (*Id.* at 24:20–25).

Contractual liability coverage, as defined by Defendants, is a bit more complicated. In Florida, Defendants are required by law carry a minimum amount of third-party liability insurance on each of their rental vehicles. Defendants represent that the minimum amount required is $10,000 in bodily injury per person, up to a total of $20,000 in bodily injury regardless of the number of people, and $10,000 in property damage. (*Id.* at 34:10–35:9). The parties do not dispute that Florida has a process by which rental car companies can obtain approval from the state to self-insure their cars for this minimum amount and that Defendants have done so. According to Defendants, the contractual liability coverage is an extension of this self-insurance. (*Id.* at 31:11–18). In other words, Defendants assert that instead of providing the minimum $10,000/$20,000/$10,000 in self-insurance, they increase the amount of self-insurance they offer their clients to $1 million in third-party liability coverage. Defendants also claim that they provide this additional contractual coverage free of charge. (*Id.* at 60:1–17).[3]

**B.    Relevant Facts**

Plaintiff alleges, and for purposes of this motion it is not disputed, that in 2010, Plaintiff purchased a bundled rental from Affordable Care Hire ("ACH"), one of Defendants' brokers. (Am.

---

[3] While Plaintiff appears to have the same understanding of the different types of third-party liability coverage, some of her claims are premised on the argument that the contractual liability coverage was actually or should have been ALI/SLI, and therefore, in many instances Plaintiff uses ALI/SLI to describe all versions of third-party liability coverage. Although the Court understands Plaintiff's argument, for clarity's sake, the Court will refer to "ALI/SLI" to mean a supplemental insurance policy purchased from an independent insurance company.

Compl., Doc. 32, ¶ 11). One million dollars of third-party liability coverage was included in her rental, (*id.* ¶ 13), but there is a factual dispute regarding which form of coverage was promised.

ACH provides customers a "rental voucher"—a reservation document describing what the customer purchased along with a reference code. (*See* Prepaid Rental Voucher, Doc. 32-4). Plaintiff's rental voucher stated that she was entitled to "LDW, ALI (Including SLI up to $1 Million), Unlimited Mileage, Airport Fees, Handling Fees, Local Taxes, Environmental Tax and 1 additional driver." (*Id.*). When Plaintiff arrived in Sanford, Florida, redeemed her voucher, and obtained her rental car, she was given a receipt, which listed various inclusions. (Receipt, Doc. 32-5). The line that read "SLI" notated that it was $.00 per day and that Plaintiff had "accepted" SLI. (*Id.*). At the time she was redeeming her voucher, Plaintiff was also given a "rental jacket" (Doc. 32-6)—an informational pamphlet folded to form a folder, or "jacket"—which provided the following information regarding SLI:

> Supplemental Liability Insurance (SLI) & Exclusions: You'll pay for SLI if available and, if you accept it. In that case, the coverage provided by us according to paragraph 17 above will be primary and the combined limits of liability protection will be $1,000,000 or $2,000,000 depending on the place of rental for bodily injury, death, or property damage for each accident, but not for more than the contracted $1,000,000 or $2,000,000 limit for each accident instead of the basic limits stated in paragraph 17 above. This additional coverage will be provided to an authorized driver, as defined in paragraph 16 above, under a separate policy of excess liability insurance more fully described in the available brochure and is subject to all of the conditions and limitations described in paragraph 17 above, except that notwithstanding anything contained in this agreement, the terms of the policy will at all times control. SLI does not apply to liability for bodily injury or property damage arising out of any "prohibited use of the car" as described in paragraph 15 of this rental agreement. Other exclusions to SLI are listed in the SLI policy. You understand that you will be charged the rate per day for a full day even if you don't have the car for the entire day.

(Rental Jacket at 1). Plaintiff interprets the above references as Defendants' promise to provide a policy of insurance through an independent insurance company for $1 million. Defendants argue that Plaintiff was only promised contractual liability coverage and that the reference to SLI in the paperwork is an internal simplification to avoid confusion by the front-line and claims personnel.

During Plaintiff's visit to Florida, she was involved in a car accident. (Venerus Dep., Doc. 79-5, at 33:12–14; Am. Compl. ¶ 16[4]). While attempting to recover benefits from Defendants, Plaintiff learned that no ALI/SLI policy was purchased for her. (Am. Compl. ¶¶ 23–25). Instead, Plaintiff's coverage was pursuant to Defendants' contractual liability coverage. (*Id.* ¶ 21). Ultimately, Plaintiff's claim was denied.[5] (*See id.* ¶ 22).

In this litigation, Plaintiff is not challenging the denial of benefits. Instead, Plaintiff alleges that Defendants' business practice of providing self-funded contractual liability coverage is illegal under Florida insurance laws. Plaintiff also alleges that Defendants promised to purchase an ALI/SLI policy from a licensed insurance provider on behalf of Plaintiff but did not fulfill that promise. As a result, Plaintiff asserts that Defendants are liable for breach of contract (Count I); unjust enrichment (Count II); disgorgement and restitution (Count III); violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, (Count IV); and violations of section 772.104, Florida Statutes (Count V), which provides a civil remedy for violations of Florida's criminal RICO statute.[6]

---

[4] Facts set forth herein that are supported by citation to the Amended Complaint are undisputed for purposes of the instant motions.

[5] It is unclear whether Plaintiff's claim would have been covered under an ALI/SLI policy, but such a determination is irrelevant at this stage.

[6] Plaintiff also made a claim for injunctive relief (Count VI), but that claim was previously dismissed. (Order on Mot. to Dismiss, Doc. 66, at 12).

Defendants do not dispute that under these bundled packages, they did not obtain insurance policies. Defendants maintain that they did not agree to, nor did they provide, an "insurance policy." Instead, Defendants argue that they only agreed to provide contractual liability coverage, which they did and which Defendants assert is legal under Florida law.

Plaintiff's proposed class is as follows:

> All persons who rented a vehicle in Florida from Avis/Budget or Budget after June 12, 2008, pursuant to a prepaid voucher, where the rental purportedly included SLI or ALI coverage through a policy of insurance and where such coverage was not provided. Excluded from the Class are all such Florida renters who have been involved in accidents and who have outstanding claims for liability or UM/UIM coverage under the SLI or ALI coverage provided by Avis/Budget or Budget.

(Certification Mot. at 12–13).

## II.    LEGAL STANDARD

"The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). "For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250–51 (11th Cir. 2004) (footnotes omitted), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

The requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a). "These four prerequisites of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Valley Drug Co.*, 350 F.3d at 1188 (quotation omitted). "Failure to establish any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification." *Id.*

If Plaintiff satisfies the requirements of Rule 23(a), she "must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Here, Plaintiff seeks certification pursuant to Rule 23(b)(3), which permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III.   ANALYSIS

Plaintiff's claims are based on two theories. The first set of claims, including the breach of contract claims, unjust enrichment, and a portion of the FDUPTA claim, are based on allegations that Defendants promised to provide ALI/SLI and failed to do so. The other set of Plaintiff's claims are based on the allegation that the contractual liability coverage that Defendants supplied violates Florida's insurance laws. For all of the claims, Defendants assert that Plaintiff does not have standing to bring the claims on behalf of the class, and that even if she did, class certification is not appropriate. The Court will address each of Defendants' arguments with regard to each set of claims.

### A.   Claims Based on Alleged Promise to Provide ALI/SLI

1.    *Standing*

"[I]t is well-settled that prior to the certification of a class, . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279–80 (11th Cir. 2000). The issue of Article III standing is jurisdictional in nature. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992). Where, as here, a factual attack is mounted regarding jurisdiction, the Court can consider "matters outside the pleadings," including "testimony and affidavits." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). To establish Article III standing, the plaintiff must show "1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987).

First, Defendants generally argue that Plaintiff lacks standing because she is not a member of the proposed class. As noted, Plaintiff's proposed class includes individuals whose "rental purportedly included SLI or ALI coverage through a policy of insurance and where such coverage was not provided." Defendants argue that Plaintiff is not such an individual because she was never promised a "policy" of insurance; she was only promised $1 million in contractual liability coverage, which she was given. This argument goes to the merits of Plaintiff's claim, not standing. Plaintiff's theory is that the documents provided to her, including the voucher, the receipt, and the informational jacket, constituted a contract that contained a promise by Defendants that they would provide a policy of insurance issued by an independent insurer. The fact that Defendants do not agree that the documents contained such a promise does not deprive Plaintiff of standing.

Nevertheless, with regard to the claims based on alleged promises to provide ALI/SLI, Plaintiff does not have standing to represent anyone in the class that purchased vehicle rentals through a company other than ACH.

### a.      Breach of Contract –Supply Agreements

Plaintiff has two breach of contract claims; the first asserts that Defendants breached the Supply

Agreements with the brokers, to which Plaintiff was a third-party beneficiary. As noted, the Supply

Agreements are between Defendants and brokers who sell rentals for Defendants. Plaintiff's claim

for breach of contract with regard to the Supply Agreements is based on Plaintiff's allegation that

those Agreements require Defendants to provide $1 million in ALI/SLI coverage when the brokers

sell a bundled rental that includes liability coverage. On the record are seven examples of Supply

Agreements with different brokers. (Ex. A to Kushner Decl., Doc. 92-2). These seven Agreements

are a small sample of the hundreds of this type of Agreement entered into by Defendants. (Kushner

Decl. ¶ 2). A cursory review of these agreements indicates that they have differing terms and are

not form contracts. Thus, Plaintiff has not shown that a breach of ACH's Supply Agreement would

necessarily mean a breach of the Supply Agreements with other brokers. In other words, Plaintiff

has not established that her purported injuries from a breach of the ACH agreement would be the

same as the injuries of the class members who did not purchase their rental from ACH.

Accordingly, Plaintiff has not established that she has standing to bring a breach of the Supply

Agreement claim on behalf of anyone who did not purchase a rental through ACH.

### b.      Breach of Contract – Rental Agreements

The second half of Plaintiff's breach of contract claim involves the rental agreement

between Defendants and the individual customers. In her individual claim, Plaintiff alleges that

she was promised ALI/SLI, which Defendants did not provide. However, Plaintiff does not have

a single form rental contract upon which she relies. Instead, Plaintiff points to various documents

and representations, including the voucher she obtained from ACH, and the receipt and

informational jacket she received at the service desk when she redeemed the voucher. Plaintiff

asserts that these documents, when read together, promise the provision of ALI/SLI rather than

contractual liability coverage. However, one key portion of this alleged contract—the rental voucher—is issued by each broker and differs depending on the broker. (Kushner Decl. ¶ 3). Indeed, some of the brokers may not even issue vouchers. (*See* Casco Dep. at 21:10–20). Plaintiff argues that this is irrelevant because she does not have to rely on the voucher; she maintains that the promise to provide ALI/SLI is evidenced by the receipt and jacket and that the relevant provisions of the receipt and jacket are uniform.

While clever, Plaintiff's argument fails to consider a fundamental rule under Florida contract law—"to give proper meaning to a specific contract provision, a court must consider it in the context of the entire contract." *St. Johns Inv. Mgmt. Co. v. Albaneze*, 22 So. 3d 728, 732 (Fla. 5th DCA 2009). Plaintiff's voucher along with what she received when she picked up her rental car must all be considered as a whole to determine precisely what was promised and what was accepted. Plaintiff cannot simply disregard portions of the agreement. Accordingly, Plaintiff has failed to show that the contracts for class members who did not purchase rentals from ACH were the same as her contract. Plaintiff has not shown that the alleged breach and resulting injuries would have been uniform; therefore, Plaintiff failed to establish that she has standing to pursue a claim for breach of the individual rental contracts on behalf of class members who did not purchase rentals from ACH.

c.    Unjust Enrichment

Plaintiff alleges an unjust enrichment claim as an alternative to her breach of contract claims against Avis/Budget.[7] For this claim, Plaintiff relies on the same representations that form the basis of her breach of contract claim. Therefore, for the same reasons set forth above, Plaintiff

---

[7] Plaintiff's unjust enrichment claim as to Budget was previously dismissed. (Order on Mot. to Dismiss at 8).

has not established that she has standing to pursue this claim on behalf of the class other than those who purchased rentals from ACH.

### d.   FDUTPA Claims

To the extent Plaintiff's FDUTPA claim is based on Defendants allegedly misrepresenting that they would provide ALI/SLI, Plaintiff has not established that she has standing to bring these claims either. "[D]eception [under FDUTPA] occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quotation omitted). Necessarily, then, the decision-maker would have to look at the entirety of the alleged misrepresentation to determine whether it was deceptive. In order to determine that Defendants made a misrepresentation by promising to provide ALI/SLI, the decision-maker would have to examine not only Defendants' practices and representations made at the time the individuals acquired their vehicles, but also what representations were made at the time the rental was purchased. Therefore, for the same reasons that Plaintiff has not established that she has standing to bring breach of contract claims on behalf of class members who did not purchase their rentals from ACH, Plaintiff has not done so with regard to the FDUPTA claims based on the same alleged misrepresentations.

### 2.   *Class Certification*

Although Plaintiff has standing to bring claims for breach of contract, unjust enrichment, and FDUTPA based on false promises of ALI/SLI for class members who purchased their rentals from ACH, Plaintiff has not established that these claims can be certified as class claims. The first requirement for certification under Rule 23(a) is "numerosity"—i.e., "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no indication on the

record of how many of the proposed class members rented vehicles through ACH. Therefore, the numerosity requirement for ACH customers is not satisfied.

It is also unclear whether it would be feasible to determine which of the customers purchased their rentals through ACH without making individual inquiries, thereby calling the commonality requirement into question. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof."). Accordingly, Plaintiff has not carried her burden for class certification of the ACH customer's breach of contract and unjust enrichment claims or the FDUTPA claims based on false promises to provide ALI/SLI.

In sum, Plaintiff cannot pursue her breach of contract and unjust enrichment claims or her FDUPTA claim based on false promises to provide ALI/SLI on behalf of the class. Plaintiff does not have standing to bring these claims on behalf of class members who did not purchase their rentals through ACH. Further, even as to those class members who purchased their rentals through ACH, Plaintiff has not carried her burden of establishing that class certification is proper under Rule 23(a).

### B.   Class Definition

Given the elimination of the above-discussed claims from the class, Plaintiff's proposed class definition must be modified as portions of it are no longer applicable. Furthermore, as set forth in Subsection III.C.2.d below, an additional exclusion must be incorporated. It is within the Court's power to alter or amend class definitions. *Mauldin v. Wal-Mart Stores, Inc.*, No. Civ.A.1:01-CV2755JEC, 2002 WL 2022334, at *18 (N.D. Ga. Aug. 23, 2002) (noting that "the Court has defined the class more narrowly than the plaintiff requested in her Motion for Class Certification" (citing *Prado-Steiman*, 221 F.3d at 1273); *see also* Fed. R. Civ. P. 23(C)(1)(c) ("An

order that grants or denies class certification may be altered or amended before final judgment.").

Accordingly, the relevant class definition is as follows:

> All persons who rented a vehicle in Florida from Avis/Budget or Budget after June 12, 2009,[8] pursuant to a prepaid voucher, where the rental included third-party liability coverage and where Avis/Budget or Budget provided self-funded contractual third-party liability coverage. Excluded from the Class are all such Florida renters who have been involved in accidents who have outstanding claims for liability or uninsured or underinsured motorist coverage under the third-party liability coverage provided by Avis/Budget or Budget. Also excluded from the Class are all such Florida renters who have received benefits under the third-party liability coverage provided by Avis/Budget or Budget.

As set forth below, the Court finds that this Class can be certified.

## C.   Remaining Claims

As noted previously, Defendants challenge Plaintiff's standing to bring the remaining claims and whether those claims can be certified as class claims.

### 1.   Standing

To the extent the three remaining claims—disgorgement and restitution, FDUTPA, and § 772.401—are based on Defendants' business practice of self-insuring for the contractual liability coverage, Plaintiff has standing to bring those claims on behalf of the class.

Defendants specifically challenge Plaintiff's standing to bring the remaining claims with regard to class members who rented Avis-brand vehicles. Defendants argue that because Plaintiff rented a Budget-brand vehicle, she did not suffer an injury with regard to an Avis product.

---

[8] Plaintiff's proposed definition included class members who rented vehicles after June 12, 2008, based on the five-year statute of limitations for breach of contract claims. However, because the Court will not certify the breach of contract claims, that statute of limitations is no longer applicable. The remaining claims all have four-year statute of limitations. Fla. Stat. § 95.11(3)(f) (statutory violations); *id.* § 95.11(3)(k) ("A legal or equitable action on a contract, obligation, or liability not founded on a written instrument"); *id.* § 95.11(3)(p) ("Any action not specifically provided for in these statutes").

Defendants rely on a series of unpublished opinions from the Southern District of Florida, holding that a plaintiff does not have standing to bring claims on behalf of class members if the plaintiff did not actually purchase the same products as all of the class members. *Dapeer v. Neutrogena Corp.*, No. 14-22113-CIV, 2015 WL 1395253, at *3–4 (S.D. Fla. Mar. 25, 2015); *Bohlke v. Shearer's Foods, LLC*, No. 9:14-CV-80727, 2015 WL 249418, at *3–4 (S.D. Fla. Jan. 20, 2015); *Reilly v. Amy's Kitchen, Inc.*, No. 13-21525-CIV, 2014 WL 905441, at *2 (S.D. Fla. Mar. 7, 2014); *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *4–5 (S.D. Fla. Sept. 13, 2013). Defendants' reliance on these cases, however, is based on a mischaracterization of Plaintiff's claims.

The product Plaintiff asserts as the basis for her injuries is the contractual liability coverage—not the vehicle she rented. The evidence indicates that this liability coverage was the same product for both Avis-brand rentals and Budget-brand rentals. (*See* Vitale Dep. at 6:9–19, 24:9–25:8). Although *Porter v. Chrysler Group LLC*, No. 6:13-cv-555-Orl-37GJK, 2013 WL 6839872 (M.D. Fla. Dec. 27, 2013) was decided on a motion to dismiss prior to discovery, the basic legal analysis therein is still applicable. There, the plaintiff alleged that the Dodge Ram truck she purchased came with a defective multi-displacement system. *Id.* at *1. The plaintiff further alleged that several other vehicles manufactured by the defendant contained the same defective multi-displacement system. *Id.* In denying the defendant's motion to dismiss for lack of standing, the court reasoned that the allegedly injurious product was the multi-displacement system, not the vehicle itself, so the plaintiff had standing to bring claims on behalf of class members who purchased different vehicles that contained the same system. *Id.* at *2. The facts in *Porter* are very similar to those at issue here, with the primary difference being that, at the motion to dismiss stage, the *Porter* court had to assume the product was the same; while here, there is evidence to support

the contention that the product is the same. Accordingly, Plaintiff has standing to bring the remaining three claims.

2.   *Class Certification for Remaining Claims—Rule 23(a)*[9]

As noted above, the same facts form the basis of all three of the remaining claims. Disgorgement and restitution are equitable in nature and allow, under certain circumstances, for the repayment of money. *See Love v. Brown Dev. Co. of Mich.*, 131 So. 144, 147 (Fla. 1930) (noting that restitution requires the repayment of money when "equity and good conscience" requires it); *Vista Designs, Inc. v. Silverman*, 774 So. 2d 884, 887 (Fla. 4th DCA 2001) (requiring disgorgement of fees paid under a void contract because "public policy dictates that a party should be unable to benefit in any way as a result of one's wrongdoing"). A FDUPTA claim requires Plaintiff to prove "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Comtys, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). A claim under § 772.104, Florida Statutes, requires Plaintiff to prove the underlying RICO violation along with proving that the RICO violation caused Plaintiff's injury. *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1381 (S.D. Fla. 2014). To prove a Florida RICO violation, Plaintiff must establish "'(1) conduct or participation in an enterprise through (2) a

---

[9] The Court cannot help but note that twelve pages out of Defendants' twenty-five page Response (Doc. 93) to the Certification Motion consist of at least a quarter page of footnotes, including five pages where the ten-point font, single-spaced footnotes take up half of the page or greater. This tactic bespeaks an attempt to circumvent this Court's page limits, which were already extended by an additional five pages at Defendants' request. (Doc. 89). It appears that Plaintiff took a similar approach in her Reply (Doc. 103). Primarily concerning is the fact that numerous arguments are raised solely in these footnotes. The parties are reminded that, while this Court did consider all of their arguments, it could have ignored those raised via footnote. *Dresser v. HealthCare Servs., Inc.*, No. 8:12-cv-1572-T-24MAP, 2013 WL 82155, at *10 n.1 (M.D. Fla. Jan. 7, 2013) (declining to address arguments raised solely in a footnote); *see also Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) ("[B]ecause [Appellant] mentions its Rule 60(b)(5) argument in passing in a footnote only and does not elaborate on it in any further detail in either one of its briefs, we deem this argument waived.").

pattern of [criminal] activity,'" as well as "'proof that a continuity of particular criminal activity exists.'" *Horace-Manasse v. Wells Fargo Bank, N.A.*, 521 F. App'x 782, 784 (11th Cir. 2013) (quoting *Lugo v. State*, 845 So. 2d 74, 97 (Fla. 2003)).

Plaintiff alleges that Defendants' practice of self-insuring for third-party liability coverage and then selling that coverage to customers was illegal. Specifically, Plaintiff alleges that this scheme constituted criminal violations of § 624.401, Florida Statutes, *see* Fla. Stat. § 624.401(4)(a) ("Any person who acts as an insurer, transacts insurance, or otherwise engages in insurance activities in this state without a certificate of authority in violation of this section commits a felony of the third degree."), which gives rise to Plaintiff's underlying RICO claim and, in turn, the § 772.104 claim. Similarly, Plaintiff alleges that the same scheme constitutes the deceptive and unfair trade practice that forms the basis of her FDUTPA claim. Finally, Plaintiff asserts that the scheme creates the equitable basis for restitution and disgorgement. Plaintiff's allegations meet the requirements of Rule 23(a).

a.    <u>Numerosity</u>

To satisfy the numerosity requirement, Plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in the Eleventh Circuit have followed non-dispositive numerical guidelines, determining that less than twenty-one class members are insufficient for establishing numerosity but that over forty class members is generally adequate to do so. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). While "'a plaintiff need not show the precise number of members in the class'" she "still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Id.* (quoting *Evans v.*

*U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983)). "[M]ere allegations of numerosity are insufficient to" establish the numerosity requirement. *Id.* (quotation omitted).

In response to Plaintiff's First Set of Interrogatories, Defendants provided business documents that contained "the number of rentals to inbound renters with prepaid tour rental vouchers for which [Defendants] have provided $1 million self-funded contractual liability insurance coverage" during the time-period of June 12, 2008, through June 23, 2014. (Defs.' Resp. to Pl.'s First Set of Interrogs., Doc. 64-1, at 7–8, 12). One of Plaintiff's attorney's legal assistants analyzed the documents and determined that, for the time period of June 2008 through May 2014, there were 29,625 Avis inbound rentals purchased via prepaid voucher initiated in Florida for which Defendants provided $1 million in self-funded contractual liability coverage. (Martinez Aff., Doc. 64-6, ¶ 4). For the same time period, she determined that there were 137,433 such rentals for Budget. (*Id.*). Defendants argue that Plaintiff has not shown that all of these rentals included third-party liability coverage. The documentation belies Defendants' contention. The requests for interrogatories and the response thereto both specify that the rentals at issue are only those that involve the self-funded contractual liability coverage, (Defs.' Resp. to Pl.'s First Set of Interrogs. at 7–8), and the compilation by Plaintiff's legal assistant further affirms that she considered only those rentals, (Martinez Aff. ¶ 3). Accordingly, Plaintiff has sufficiently established the numerosity requirement.

b.   Commonality

"[C]ommonality [is] the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550–51 (2011) (quoting Fed. R. Civ. P. 23(a)(2)).   Plaintiff must "demonstrate that the class members have suffered the same injury[.] This does not mean merely that they have all suffered a violation of the

same provision of law." *Id.* at 2551. The class claims "must depend upon a common contention"; [w]hat matters to class certification is . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (emphasis and quotation omitted).

As noted, the three remaining claims require the proof of the same basic facts: that Defendants provided third-party liability coverage and that Defendants self-insured for that liability coverage. Similarly, all of the claims require an answer to the same question: whether Defendants' practice of providing self-funded contractual liability coverage violated Florida's insurance laws and regulations. Defendants argue that the analysis of the claims would require an individualized inquiry into what each class member was promised. While this argument has merit with regard to Plaintiff's breach of contract claims, it is not applicable to the remaining claims. The remaining claims are not premised on "promises" of insurance "policies" as Defendants' contend, but rather, on whether or not what Defendants actually provided—the contractual liability coverage—was legal. Accordingly, Plaintiffs have satisfied the commonality requirement.

c.    Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical." *Vega*, 564 F.3d at 1275 (quotation omitted). "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* "'[T]he commonality and typicality requirements . . . tend to merge. Both serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will

be fairly and adequately protected in their absence.'" *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551 n. 5 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).

Plaintiff's claims are typical of the class members' claims. Defendants confirmed that anyone who purchased a prepaid voucher that included third-party liability coverage of any type, regardless of the name used, received Defendants' self-insured contractual liability coverage. It is this liability coverage that Plaintiff alleges was illegal and caused her and all the other class members damages. Not only are Plaintiff's remaining claims typical of the class claims, they are virtually identical.

### d.      Adequacy of Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." "This adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189 (quotation omitted). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." *Id.* Such conflicts "go[] to the specific issues in controversy." *Id.* "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification." *Id.*

Defendants primarily focus on the first factor—purported conflicts of interest between Plaintiff and class members. Plaintiff's proposed class description excluded all Florida renters who have been involved in accidents and who have outstanding claims for liability or uninsured/underinsured motorist coverage. Defendants argue that this exclusion leaves a sub-class of individuals with interests in conflict with Plaintiff's interests—those who made claims that are no longer outstanding because they have already received benefits under the contractual liability

coverage. Defendants' argument is well-taken. However, this conflict does not eliminate the ability for this Court to certify a class in this case because that sub-class is easily divisible. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("An acceptance of the benefits by a portion of a class only makes class action treatment inappropriate when the class cannot be divided and thus persons with antagonistic interests would have their rights decided by a single proceeding."). Accordingly, as explained in Subsection III.B, the Class definition has been amended to exclude those individuals.

Defendants also argue that Plaintiff's interests are in conflict with those individuals who would prefer for Defendants to provide contractual liability coverage rather than ALI/SLI from an independent company. In essence, Defendants argue that there is a sub-class of individuals who regularly utilize Defendants' services who would rather pay less (or according to Defendants, nothing) for Defendants' contractual liability coverage rather than the higher rate for an ALI/SLI insurance policy issued by a licensed insurance company. Although the Court will not comment on the merits of Plaintiff's claims at this time, Plaintiff is asserting that Defendants' self-insurance practice is illegal. Therefore, as Plaintiff cogently argues—albeit in a footnote—unidentified class members' possible preference to keep an unlawful status quo in place does not create a conflict of interest. *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 643 (M.D. Fla. 2011) ("[T]he fact that an illegal activity tends to favor the long-term interests of several large members of the putative class is not sufficient to prevent class certification. This is not an interest the law is willing to protect." (quotation omitted)).

Additionally, contrary to Defendants' argument, Plaintiff appears to have a sufficient grasp on the factual basis for the class claims. (Venerus Dep., Doc. 79-5, at 22:25–24:4, 31:7–20, 48:20–23, 51:21–52:4, 56:2–14). Plaintiff has also demonstrated her dedication to properly representing

the class by, for example, using her personal vacation time to travel to the United States to have her deposition taken. (*Id.* at title page ("Place: . . . Orlando, FL"), 9:2–3). Finally, Defendants do not argue that Plaintiff's attorneys are unable to represent the class sufficiently, and the Court can discern no reason to conclude as such. (*See* Normand Resume, Doc. 79-6; Lynch Resume, Doc. 79-7).

Therefore, as explained by the foregoing analysis, Plaintiff has satisfied all of the requirements of Rule 23(a) with regard to the disgorgement and restitution, § 772.401, and remaining FDUPTA claim.

### 3.      *Class Certification for Remaining Claims—Rule 23(b)(3)*

Along with the requirements of Rule 23(a), Plaintiff must satisfy one of the options under Rule 23(b). As noted, Plaintiff asserts that class certification is appropriate under Rule 23(b)(3), which requires "the questions of law or fact common to class members [to] predominate over any questions affecting only individual members, and that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." These requirements are referred to as "predominance" and "superiority." Pertinent factors in determining predominance and superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

#### a.      <u>Predominance</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "In order to determine whether common questions predominate, we are called upon to examine the cause of action asserted in the complaint on behalf of the putative class." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (quotation omitted). The focus of the predominance inquiry is "on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem*, 521 U.S. at 623. "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay*, 382 F.3d at 1255.

Under the narrowed version of the Class as defined herein, common issues of fact and law predominate. The basis of all three claims is that the product provided by Defendants—the contractual liability coverage—was illegal. Defendants have not pointed to, and the Court cannot determine, any significant individualized questions of law or fact at issue. At the essence of all three claims is whether Defendants' practice was illegal. Further, with regard to the causation elements of the FDUPTA claim and the § 772.104 claim, it appears that any damages caused would be from the provision of the illegal product. Thus, the proof necessary would be that the individuals actually purchased the product. This is easily established through paper discovery and does not require an intensive individual inquiry. Therefore, the answer to the question of whether Defendants' business practice was illegal establishes most, if not all, of the elements of Plaintiff's remaining causes of action. (*See* Subsection III.C.2 (discussing the elements of each)).

        b.      <u>Superiority</u>

The determination of whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" under Rule 23(b)(3), focuses on "'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183–84 (11th Cir. 2010) (quoting *Klay*, 382 F.3d at 1269). The predominance analysis has a tremendous impact on the superiority analysis. "[T]he less common the issues, the less desirable a class action will be as a vehicle for resolving them." *Id.* at 1184.

At this point, it does not appear that any other class members have begun litigation similar to this case. (Moffa Decl., Doc. 92-1, ¶ 8). Further, consolidation in one forum is particularly advantageous in this case given the fact that so much of the analysis hinges on the legal interpretation of Defendants' business practice; litigation in a single forum will eliminate the possibility of inconsistent interpretations. Additionally, it is likely all of the class members will be located outside of the United States, making it particularly difficult for each class member to bring his or her own, individual action. Finally, the Court does not anticipate any major difficulties in managing this class action. Accordingly, the Court finds that a class action is superior to other methods of adjudicating the class members' claims.

## IV.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Renewed Motion for Class Certification (Doc. 80) is **GRANTED in part**.

   a. Counts III, IV, and V of Plaintiff's Amended Complaint, as limited herein, are **CERTIFIED** as a class action on behalf of the Class as defined in this Order.

b.  Plaintiff is **CERTIFIED** as Class Representative.

c.  Attorneys Edmund Normand and Christopher J. Lynch are **DESIGNATED** as Class Counsel.

d.  Plaintiff's Renewed Motion for Class Certification is denied in all other respects.

2.  Defendants' Motion to Strike Portions of the Affidavit of J. Robert Hunter (Doc. 91) and Plaintiff's Opposed Motion to Strike Affidavits of C. Thomas Gallagher and Gregory V. Serio (Doc. 113) are **GRANTED** insofar as they request the Court not to consider the Affidavits for purposes of the Motions at issue in this Order.

3.  Defendant Avis Budget Car Rental, LLC's Motion to Dismiss Plaintiff's Proposed Class Claims on Behalf of Avis Renters for Lack of Article III Standing (Doc. 130) is **DENIED**.

4.  Defendants' Motion for Leave to File a Reply in Support of Motion to Dismiss Plaintiff's Proposed Class Claims on Behalf of Avis Renters for Lack of Article III Standing (Doc. 132) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on September 25, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record