UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HEATHER VENERUS,**

      **Plaintiff,**

v.                                                             Case No:  6:13-cv-921-Orl-41GJK

**AVIS BUDGET CAR RENTAL, LLC**
**and BUDGET RENT-A-CAR SYSTEM,**
**INC.,**

      **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on the parties' cross motions to reconsider this Court's Summary Judgment Order (Doc. 203) and its Order amending the class definition (Doc. 232). (Pl.'s Am. Mot. Recons. Summ. J. Order, Doc. 238; Pl.'s Mot. Recons. Order Am. Class Definition, Doc. 233; Defs.' Mot. Recons. Summ. J. Order, Doc. 249; Defs.' Mot. Recons. Order Am. Class Definition, Doc. 250). As set forth below, the Court will grant in part and deny in part the motions for reconsideration of the Order on Summary Judgment, decertify the class, and deny as moot the motions for reconsideration of the Order amending the class definition. Defendants' second and third motions to decertify the class (Doc. Nos. 268 & 269) will also be denied as moot. Finally, the parties' motions in limine (Doc. Nos. 163, 192, & 193) will be denied without prejudice; the parties will be given the opportunity to identify which arguments therein are still applicable and re-assert those.

### I.   BACKGROUND

The factual background of this case has been adequately set out in numerous orders and does not need to be explained yet again. (*See, e.g.*, Doc. 203 at 1–5). It is sufficient at this point to

note that Plaintiff made an online rental of a vehicle from Defendants through a third party broker. (*Id.* at 2). When she made the online rental, she received a Rental Voucher (Doc. 32-4). (Doc. 203 at 2). When she obtained the vehicle, she received a receipt ("Rental Receipt," Doc. 32-5) and a booklet or jacket with various terms and conditions ("Rental Jacket," Doc. 32-6). (Doc. 203 at 3). The specific provision at issue pertains to Supplement Liability Insurance ("SLI").

Plaintiff has three individual claims that were not certified as part of the class. Count I asserts a breach of contract claim based on Defendants' promise to provide a SLI policy issued from third-party ACE American Insurance Company ("ACE") and Defendants' failure to do so. Count II is an unjust enrichment claim pleaded in the alternative to Plaintiff's breach of contract claim. Count IV alleges two violations of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), one of which is related to Plaintiff's breach of contract claim and asserts that Defendants engaged in unfair and deceptive trade practices by representing that they would procure an SLI policy from ACE. None of these claims were certified as class claims because, among other things, they required an individualized review of the contracts and representations between Defendants and each Plaintiff.

Plaintiffs remaining claims are all premised on Defendants' alleged violation of section 624.401, Florida Statutes. Count III labeled as "Disgorgement and Restitution," is really a claim pursuant to section 624.155(2), which provides a civil right of action for certain violations of section 624.401. Plaintiff also asserts claims pursuant to FUDTPA and the Florida Civil Remedies for Criminal Practices Act ("CRCPA") based on Defendants' alleged violations of section 624.401.

## II.  LEGAL STANDARD

District courts are afforded considerable discretion to reconsider prior decisions. *See Harper v. Lawrence Cty.*, 592 F.3d 1227, 1231–32 (11th Cir. 2010); *Lamar Advert. of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 488–89, 492 (M.D. Fla. 1999); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994). Here, the parties have clarified facts that appeared to be disputed when they first moved for summary judgment. Because those facts are no longer in dispute, the Court can now engage in the legal analysis that it was unable to conduct based on the motions for summary judgment. Accordingly, reconsideration is appropriate.

### III. ANALYSIS

#### A. Breach of Contract

As set forth in the Summary Judgment Order, there was an issue of fact as to the contours of the rental contract at issue, preventing a legal determination with regard to breach of that contract. (Doc. 203 at 10–12). In their currently-pending motions, the parties have agreed that the Rental Jacket and the Rental Receipt are part of the contract. Defendants argue that the Rental Voucher was also part of the Contract. The Court agrees. *Wilson v. Terwillinger*, 140 So. 3d 1122, 1124 (Fla. 5th DCA 2014) ("The law is well established that two or more documents executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract." (quotation omitted)).[1]

---

[1] At one point in this litigation, Defendants asserted that they were not parties to the Voucher. Defendants have apparently changed course at this stage; however, lest they attempt to raise the argument again, the Court notes that such an argument is without merit. It is clear that the broker who sold Plaintiff the Rental Voucher was Defendants' agent and acted with either actual or apparent authority. To the extent the broker did not have actual authority, Defendants later ratified its actions by accepting the Voucher. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1355 (11th Cir. 2011) ("Ratification of an agreement occurs where a person expressly or impliedly adopts an act or contract entered into in his or her behalf by another without authority. The principal must have full knowledge of the initially unauthorized agents' conduct and approve of that conduct." (quotation omitted)).

With regard to SLI, the Rental Jacket provides:

> Budget has [SLI] available at all Florida locations. SLI is a special optional service offered by Budget when you rent a car from Budget. It's an "Excess Automobile Liability Insurance Policy" that provides [SLI], within specified limits, above the limits provided in this Rental Agreement. SLI insures you, and authorized operators as defined in this Rental Agreement against claims made by third parties against you, the customer, for bodily injury/death and property damage caused by the use or operation of [a] Budget rental vehicle as permitted in this Rental Agreement. *SLI is a separate insurance policy issued to Budget by ACE American Insurance Company. If you elect to accept SLI for [a] Supplemental daily charge as shown on this Rental Agreement.* The purchase of SLI is not required in order to rent a car from Budget.

(Doc. 32-6 at 3 (emphasis added)). The Jacket goes on to state:

> Supplemental Liability Insurance (SLI) & Exclusions: *You'll pay for SLI if available and, if you accept it.* In that case, the coverage provided by us according to paragraph 17 above will be primary and *the combined limits of liability protection will be $1,000,000 or $2,000,000 depending on the place of rental for bodily injury, death, or property damage for each accident, but not for more than the contracted $1,000,000 or $2,000,000 limit for each accident* instead of the basic limits stated in paragraph 17 above. This additional coverage will be provided to an authorized driver, as defined in paragraph 16 above, under a separate policy of excess liability insurance more fully described in the available brochure and is subject to all of the conditions and limitations described in paragraph 17 above, except that notwithstanding anything contained in this agreement, the terms of the policy will at all times control. SLI does not apply to liability for bodily injury or property damage arising out of any "prohibited use of the car" as described in paragraph 15 of this rental agreement. Other exclusions to SLI are listed in the SLI policy. *You understand that you will be charged the rate per day for a full day even if you don't have the car for the entire day.*

(*Id.* at 2 (emphasis added)).

The Rental Receipt has a line-item notated as "SLI: .00/Day Accepted." (Doc. 32-5 at 2). This entry is included in a list of other line items—"LDW [Loss Damage Waiver]: .00/Day Accepted"; "PAE [Personal Accident and Effects Insurance]: 6.95/Day Declined"; and "ESP [Emergency Sickness Protection]: 5.00/Day Declined." (*Id.*; *see also* Doc. 32-6 at 2–3 (defining LDW, PAE, and ESP)).

Thus, the Rental Jacket indicates that a customer who wishes to obtain SLI must accept the SLI and will be charged an additional daily fee. However, the Rental Receipt clearly indicates that Plaintiff accepted SLI but was not charged a daily fee. The Rental Voucher clarifies this apparent inconsistency. The Voucher provides: "Rental Includes: LDW, ALI (Including SLI up to $1 Million), Unlimited Mileage, Airport Fees, Handling Fees, Local Taxes, Environmental Tax and 1 additional driver." (Doc. 32-4 at 2). The logical reading of these three documents is that the daily rate for the SLI was included in the price Plaintiff pre-paid and, therefore, she "accepted" the SLI, but she owed zero dollars for it when she obtained the vehicle because she had already paid for it. *See Gold Coast Media, Inc. v. Meltzer*, 751 So. 2d 645, 646 (Fla. 3d DCA 1999) (noting that courts must construe contract provisions "with reason, probability, and the practical aspect of the transaction between the parties"). This interpretation is consistent with the fact that LDW was also listed in the Voucher as included in her rental, (Doc. 32-4 at 2), and it is listed as "accepted" for zero dollars per day on the Receipt, (Doc. 32-5 at 2), while items that were not included in the Voucher—PAE and ESP—have a price per day and are listed as "declined" on the Receipt, (*id.*). *See Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) ("The court must look at the contract as a whole, the parties, and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement.").

Contrary to Defendants' argument, this conclusion does not render superfluous the language in the Rental Jacket stating that the SLI is provided for an additional daily charge. Given the undisputed fact that Plaintiff purchased a bundled rental, which included several things in addition to the rental of the car, it is entirely reasonable and logical that Plaintiff would have pre-paid the daily amount for SLI in that bundled rate. Accordingly, this interpretation does not contradict the terms of the Rental Jacket.

Defendants also argue that this interpretation is contrary to the terms in the Rental Jacket. The Voucher states that Plaintiff purchased $1 million in SLI coverage while, according to Defendants, the Rental Jacket states that SLI, as defined therein, is for $2 million in coverage. However, the Rental Jacket actually states that "the combined limits of liability protection will be $1,000,000 or $2,000,000 depending on the place of rental for bodily injury, death, or property damage for each accident, but not for more than the contracted $1,000,000 or $2,000,000 limit for each accident," (Doc. 32-6 at 2), and that "[t]he SLI coverage limits equal the difference between the minimum financial responsibility limits, if any . . . and the SLI maximum $2,000,000 combined single limit per occurrence," (*id.* at 3). Thus, under the plain language of the contract, the SLI can be for either $1 million or $2 million in coverage, $2 million is the maximum amount of coverage that can be provided under SLI, and Plaintiff purchased the $1 million coverage.

Accordingly, Defendants promised to provide Plaintiff with a $1 million SLI policy, as defined in the Rental Jacket—which includes the representation that "SLI is a separate insurance policy issued to Budget by ACE." (*Id.*). It is undisputed that Defendants did not do so. This promise and breach form the basis of Plaintiff's breach of contract claim.

To prevail on a breach of contract claim, Plaintiff must establish the following elements: (1) a valid contract; (2) a material breach; (3) causation; and (4) damages. *Handi-Van, Inc. v.*

*Broward Cty.*, 116 So. 3d 530, 541 (Fla. 4th DCA 2013); *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). As set forth above, Plaintiff has established that Defendants promised to provide an SLI policy issued by ACE and did not do so. Thus, Plaintiff has established the first two elements. In their Motion for Summary Judgment,[2] Defendants argued that Plaintiff could not possibly prove damages because, in determining the price for the bundled rates, Defendants did not itemize the price it would charge for SLI. Instead, Defendant asserts that they looked at competitors' rates and offerings, and Defendants based their rates on what the market would support. Defendants' internal methodology for determining the bundled rates, however, is not the only basis upon which damages may be determined. Indeed, Defendants admitted that they would not be able to get overseas business if they did not offer $1 million SLI coverage. (Vitale Dep., Doc. 29-1, at 74:9–20). Clearly, then, the SLI included in the bundled rate has value regardless of whether it was given an itemized value by Defendants. Accordingly, Plaintiff has proven that Defendants breached the Rental Contract. There is an issue of fact as to whether that breach caused Plaintiff damages.

### B.    Sections 624.155(2) and 624.401, Florida Statutes

Counts II and IV and, in part, Count III of the Amended Complaint are based on Defendants' alleged violation of section 624.401, Florida Statutes. Private rights of action for violations of section 624.401 are controlled by section 624.155(2). Private parties cannot bring claims for violations of section 624.401 that are not encompassed by the private right of action in section 624.155(2). *Lemy v. Direct Gen. Fin. Co.*, 885 F. Supp. 2d 1265, 1273 (M.D. Fla. 2012),

---

[2] In the Summary Judgment Order, the Court found there was an issue of fact with regard to liability and, therefore, did not address the issue of damages. Because the liability issue has been clarified upon reconsideration, the Court will now address the damages arguments made in the Motions for Summary Judgment.

*aff'd*, 559 F. App'x 796 (11th Cir. 2014) ("The Office [of Insurance Regulation] (or, if an insurer commits a crime, the state) enjoys an exclusive authority to protect the public by enforcing the sections of the insurance code for which the legislature provides no private remedy."). Thus, Plaintiff's CRCPA and FUDTPA claims cannot be used to circumvent the private right of action set forth in Florida's comprehensive statutory scheme for insurance regulation.

In the Summary Judgment Order, this Court noted that a threshold inquiry for liability under section 624.155(2) was whether Defendants were "insurers" as defined by the statute. Plaintiff argues that the Court erred in that determination. Section 624.155(2) provides: "Any party may bring a civil action *against an unauthorized insurer* if such party is damaged by a violation of section 624.401 by the unauthorized insurer." (emphasis added). Plaintiff points to language of section 624.401, which prohibits many things, including "act[ing] as an insurer, transact[ing] insurance, or otherwise engag[ing] in insurance activities in this state without a certificate of authority." Fla. Stat. § 624.401(4)(b). While Plaintiff is correct that section 624.401 does prohibit all of these things, Plaintiff ignores the fact that section 624.155(2) only provides a civil remedy against unauthorized insurers. Therefore, while certain activities may be illegal under section 624.401, the statutory scheme does not provide a civil remedy for those violations where the violation is committed by one other than an insurer. Accordingly, the Court will not reconsider its conclusion that, to be held liable for violations of section 624.401 pursuant to the civil remedy provision, section 624.155(2), Defendants must be unauthorized insurers.

Moreover, given the Court's conclusion regarding the breach of contract claim, at least with regard to Plaintiff's claim, Defendants were not acting as insurers. An "insurer" is defined as including "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity." Fla. Stat. § 624.03. Only whether Defendants were

"contractor[s] in the business of entering into contracts of insurance" is at issue here. In order to fall into this "contractor" category, Defendants must be a party to a contract for insurance. *See Underwood Anderson & Assocs., Inc. v. Lillo's Italian Rest., Inc.*, 36 So. 3d 885, 887–88 (Fla. 1st DCA 2010) (determining that an insurance sales agent was not an "insurer" under the contractor category of § 624.03 because he was not a party to the insurance contract). As articulated in the breach of contract analysis, the contract between Plaintiff and Defendants provided that Defendants would procure a policy of insurance from ACE; it did not state that Defendants would provide insurance themselves. Defendants' internal decision to breach the contract and not obtain a third-party insurance policy from ACE does not transform their contract with Plaintiff into a contract for insurance.

Moreover, because there was no contract for insurance between Plaintiff and Defendants, Plaintiff was not a "party" to any such contract and, therefore, cannot bring a claim under the civil remedy provision. *Bortell v. White Mountains Ins. Grp.*, 2 So. 3d 1041, 1045 (Fla. 4th DCA 2009) (determining that the plaintiff did not have standing to bring a claim under the civil remedy provision because he was not a party to a contract for insurance). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's individual claim under section 624.155(2).

Finally, even if Plaintiff's FUDTPA and CRCPA claims were not foreclosed by the limited private right of action in section 624.155(2), Defendants would be entitled to summary judgment as to those claims. Specifically, section 624.401 makes it illegal for any person to act as an insurer, transact insurance, or otherwise engage in insurance activities without the proper certificate of authority. However, as it pertains to Plaintiff, the evidence demonstrates that Defendants did none of those things. Defendants contracted to procure an insurance policy from a third party. The mere fact that Defendants, internally and without agreement by Plaintiff, decided not to procure an

insurance policy as required in the Rental Agreement, does not transform the Agreement into one for insurance. Moreover, despite Defendants' assertions that they would have paid any liability claims that Plaintiff may have had, the parties did not enter into any agreement in this vein, Defendants did not issue any sort of insurance policy, Plaintiff did not have any liability claims, and Defendants did not make any payments on her behalf.

Simply put, as to Plaintiff, Defendants entered a contract to procure insurance, which they breached; Defendants did not enter a contract to insure Plaintiff.[3] The mere fact that Defendants may have, hypothetically, paid a claim for liability if that situation had come up does not equate to Defendants acting as an insurer, transacting insurance, or otherwise engaging in insurance activities. Thus, as to Plaintiff's individual claims, Defendants are entitled to summary judgment on her section 624.155(2), FUDTPA, and CRCPA claims.

### C.    Class Certification

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Although it is certainly preferable to make such alterations as early as possible, where there are "subsequent developments in the litigation," "the judge remains free to modify [the class certification]." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). As evidenced by the above analysis, such developments have occurred in this case, and class certification is no longer proper.

Specifically, the certification was premised on the allegation that Defendants were engaged in a uniform business practice of entering into contracts for insurance coverage themselves, as so-called "self-insurers," rather than procuring such coverage from a licensed third-party insurer. As

---

[3] Because the Court finds that the parties did not enter an agreement whereby Defendants would provide $1 million in self-insurance to Plaintiff, the Court will not comment on the legality of doing so.

the above analysis reflects, whether or not Defendants actually engaged in such a business practice depends on what Defendants agreed to do under specific contracts. Such an analysis would require a case-by-case review of each agreement between Defendants and each class member as well as a review of what insurance, if any, was provided to each class member. Accordingly, the previously certified class claims no longer satisfy the commonality requirement under Federal Rule of Civil Procedure 23(a)(2), and can no longer be certified as class claims. *Wal-Mart Stores, Inc. v. Dukes*, 546 U.S. 338, 350 (2011) (noting that class claims "must depend upon a common contention" and that "[w]hat matters to class certification is . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation" (emphasis and quotation omitted)); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof.").

### IV.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Amended Motion for Reconsideration of Order on Cross Motions for Summary Judgment (Doc. 238) and Defendants' Cross-Motion for Reconsideration of Order on Cross Motions for Summary Judgment (Doc. 249) are **GRANTED in part** and **DENIED in part**.

    a. Plaintiff is entitled to summary judgment as to liability on her individual breach of contract claim.

    b. Defendants are entitled to summary judgment on Plaintiff's individual section 624.155(2) and CRCPA claims and on Plaintiff's individual FUDTPA claim insofar as the FUDTPA claim is based on a violation of section 624.401.

      c. The Motions are **DENIED** in all other respects.

2. The class claims are **DECERTIFIED**.

3. Plaintiff's Motion for Reconsideration of Order Altering or Amending the Class Definition (Doc. 233); Plaintiff's Motion for Reconsideration of Order on Cross Motions for Summary Judgment (Doc. 237); Defendants' Cross-Motion for Reconsideration and to Decertify Class (Doc. 250); Defendants' Second Motion to Decertify Class (Doc. 268); Defendants' Third Motion to Decertify Class (Doc. 269; and Defendants' Amended Third Motion to Decertify Class (Doc. 276) are **DENIED as moot**.

4. Defendants' Motion to Exclude Testimony of Bradley M. Braun and Leslie R. Marlo (Doc. 163); Plaintiff's Omnibus Motion in Limine (Doc. 192); Defendants' Omnibus Motion in Limine (Doc. 193); Defendants' Motion to Strike Plaintiff's Deposition Designations (Doc. 284); Defendants' Motion to Strike Certain Witnesses (Doc. 292); and Defendants' Motion to Strike Certain Exhibits (Doc. 293) are **DENIED without prejudice**. Given the significant change in the claims at issue, the parties will be given the opportunity at the Final Pretrial Conference to inform the Court as to which issues set forth in the various motions in limine are still applicable and renew any such motions or portions of motions as necessary.

5. The Final Pretrial Conference, set for September 29, 2016 is **CANCELLED** and will be rescheduled.

6. A Telephonic Status Conference is set for **September 30, 2016, at 2 pm in Orlando Courtroom 5B, before Judge Carlos E. Mendoza**. Counsel shall call the Courtroom Deputy Clerk at (407) 835-4304 by 12:00 p.m. on Friday, September

30, 2016, to advise of a phone number where they can be reached for the conference. The parties should be prepared to discuss the administration of this case going forward, including rescheduling the Final Pretrial Conference and the estimated time necessary for trial in light of this Order. Substantive motions will not be addressed.

**DONE** and **ORDERED** in Orlando, Florida on September 29, 2016.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record